Nathan B. FISCHER, Plaintiff,

v.

INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION et al., Defendants.

No. 74 C 576.

United States District Court,
E. D. New York.

Sept. 29, 1976.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff.

Wormser, Kiely, Alessandroni, Mahoney & McCann, New York City, for ITT.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Rohatyn and Lazard.

Debevoise, Plimpton, Lyons & Gates, New York City, for Black and Friedman.

Davis Polk & Wardwell, New York City, for defendants Geneen, Bennett, Brittenham, Dunleavy.

## MEMORANDUM

PLATT, District Judge.

Plaintiff moves for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure declaring that this action may be maintained as a class action on behalf of all purchasers between April 13, 1971 and March 6, 1974 of shares of the $5 Cumulative Preferred Series "O" Stock of the defendant, International Telephone and Telegraph Corporation ("ITT").

## THE COMPLAINT

In the first claim of his amended complaint plaintiff alleges that his claim is based on Section 22 of the Securities Act of 1933 to enforce a liability created by Section 11 of the Securities Act; that ITT is a publicly traded company whose common stock is traded on the New York Stock Exchange; that on April 13, 1971, ITT registered a million shares of Series O stock with the Securities and Exchange Commission ("SEC") pursuant to a registration statement; and that on or about said date it transmitted through the mails a prospectus relating to such stock for the purpose of soliciting members of the investing public to make offers to buy the same.

Plaintiff further alleges that he obtained a copy of the prospectus and thereafter on February 15, 1973, he purchased five shares of said securities for $464.04 which he claims are now worth approximately $255.

Plaintiff further alleges that in March of 1974 the Internal Revenue Service ("IRS") announced that it had revoked a ruling that it had previously issued that the acquisition by ITT of Hartford Fire Insurance Company would not result in a capital gains tax being imposed upon Hartford shareholders who exchanged their Hartford stock for ITT securities.

On April 13, 1974, plaintiff says that an article appeared in the New York Times which led him to believe that such IRS ruling was obtained on the basis of a misleading application filed by ITT with the IRS and that accordingly plaintiff believes that the aforesaid prospectus and registration statement were false and misleading in that they omitted material facts, namely: that such IRS ruling was obtained on the basis of a false and misleading application and that it was therefore subject to revocation by the IRS.

By reason of the foregoing, plaintiff alleges that he is entitled to recover from the defendant his damages resulting from his purchase of the shares of such Series O stock.

In his second claim in his amended complaint, plaintiff repeats the foregoing allegations and alleges that the defendants knew at the time the aforesaid prospectus was issued that it was false and misleading as indicated above, and that plaintiff did not know and could not have known of the omission of the aforedescribed material facts in the exercise of reasonable diligence and would not have purchased the aforesaid securities at the price he did had he known the facts as to the omission.

By reason of the foregoing, plaintiff alleges that he is entitled to damages resulting from his purchase of the shares of such securities.

In a third claim, plaintiff again realleges all of the foregoing and claims that the facts herein warrant the maintenance of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

In his moving papers, plaintiff points out that (i) the class which he seeks to represent is an objectively ascertainable group [1]; (ii) the class is so numerous that joinder of all members is impracticable under Rule 23(a)(1) of the Federal Rules of Civil Procedure [1]; (iii) there are questions of law and fact common to the class under Rule 23(a)(2) [1]; (iv) the claims of the plaintiff are typical of the claims of the class under Rule 23(a)(3); (v) the questions of law and fact common to the members of the class predominate over any questions affecting only individual members of the class under Rule 23(b)(3); (vi) a class action is superior to other available methods for the fair and efficient adjudication of a controversy under Rule 23(b)(3) [1]; and (vii) the plaintiff as a representative party will fairly and adequately protect the interests of the class under Rule 23(a)(4).

In answering papers to plaintiff's motion, defendants argue only (i) that the plaintiff's claims are not typical of the claims of others in the class he purports to represent; (ii) that there are individual questions of fact and law which predominate over common questions; and (iii) that neither the plaintiff nor his attorney who is also his son is able to fairly and adequately protect the interests of the class.

The basis for defendants first two points appears to be that all of the material facts with respect to the "sale" by ITT of its 1.7 million shares of Hartford stock to Medio-

banca as a predicate to ITT's obtaining the above-indicated favorable ruling from the IRS were published in the New York Times in a series of articles in 1972, in the Wall Street Journal and in an action entitled *Herbst v. ITT, et al.*, filed on July 6, 1972 in the United States District Court for the District Court of Connecticut (Civil Action No. 15,555).[2] Such being the case, say the defendants, individual questions exist as to whether each purchaser of Series O stock had either actual or constructive knowledge of the material facts at the time of his or her purchase and that plaintiff's claims are not "typical of the claims * * * of the class" by reason of the individual circumstances of his own purchase of Series O stock.

Plaintiff points out, however, in reply that the disclosure or nondisclosure of the facts with respect to the alleged "sale" of ITT's Hartford securities to Mediobanca is not the basis for his complaint, but rather it is the failure of ITT to disclose in its prospectus that it had filed a false and misleading application with the Internal Revenue Service to obtain its favorable tax ruling that constitutes the basis for his complaint. In other words, plaintiff says he was entitled to presume that ITT had made a full disclosure to the IRS with respect to all of the facts pertaining to the alleged "sale" to Mediobanca when it sought the tax ruling in question and the fact that it did not disclose in its prospectus to purchasers of Series O stock that the tax ruling had been obtained without full disclosure of all the facts constituted a fraud upon the plaintiff and other purchasers thereof.

■ The distinction appears to be a valid one because as plaintiff points out, if full and accurate disclosure of all the facts had been made to the IRS then IRS would not have revoked its ruling retroactively as it did when it discovered and claimed that a

---

**1.** Not disputed by the defendants.

**2.** The fact that plaintiff claimed in this action that ITT's application for a tax ruling contained

false information would not appear to be determinative because there was no proof or confirmation of this claim until March of 1974.

fraud had been practiced upon it. (Treas. Reg. § 601.201(1)(5), 8 CCH Std.Fed.Tax Rep. ¶ 6,003L).

This then is the issue, namely: did ITT improperly fail to inform the Series O purchasers that it had obtained a favorable tax ruling from the IRS knowing that such tax ruling was based upon material false, misleading, inadequate information given to the IRS as a predicate therefore.

This issue is unquestionably common to all members of the class which plaintiff purports to represent and common questions of fact and law predominate over any individual questions insofar as this issue is concerned.

Whether such information should have been given to such purchasers in the prospectus and, if so, whether such failure caused damage to plaintiff and other members of the class, are questions which remain for another day.

Defendants further claim that neither the plaintiff nor his attorney who is also his son is able fairly and adequately to protect the interests of the class; first, because plaintiff as father of the attorney for the purported class is not an appropriate representative of the class, and second, because of his alleged lack of interest and knowledge about the case as well as his physical inability to assert vigorously the interests of the class.

In support of the first contention, defendants cite a string of cases which they claim require the conclusion that since the plaintiff's son is the attorney in this action, it may not be maintained as a class action.

The Court has examined these cases and has determined that the touchstone for denial of class action status in each case (with one exception) is that the plaintiff "might have an interest in the legal fees that the attorney may ultimately seek". *Stull v. Pool,* 63 F.R.D. 702, 704 (S.D.N.Y.1974), (wife of attorney); *Stull v. Baker,* 410 F.Supp. 1326, 1337 (S.D.N.Y.1976), (uncle and law partner); *Dennis v. Saks & Co.,* 1975-2 Trade Cas. ¶ 60,396 at 66,748 (S.D.N.Y.1975), (wife of attorney); *Cotchett v.*

*Avis Rent A Car System, Inc.,* 56 F.R.D. 549, 554 (S.D.N.Y.1972), (law partner); *In re Goldchip Funding Co.,* 61 F.R.D. 592, 594–95 (M.D.Pa.1974), (did not decide question); *Graybeal v. American Savings & Loan Ass'n,* 59 F.R.D. 7, 13–14 (D.D.C.1973), (dual role of representative and attorneys); *Kriger v. European Health Spa, Inc.,* 56 F.R.D. 104, 105–06 (E.D.Wis.1972), (associate in law firm); *Shields v. Valley National Bank,* 56 F.R.D. 448, 449–50 (D.Ariz.1971), (plaintiff and attorney same person).

In *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa.1975), it was contended that a conflict of interest existed between the representative parties and the class because one of the named plaintiffs was an attorney and partner of counsel for the plaintiffs and the remaining named plaintiffs were "siblings" of such plaintiff. Notwithstanding the fact that such plaintiff might "benefit through his partnership in the law firm * * * from an award of legal fees, if plaintiffs are successful in the present litigation, this interest [did] not in [the Court's opinion] create substantially more of a risk that the suit would be compromised unfairly as respects class interests than would exist if there were no relationship between representative parties and counsel for plaintiffs." In that case the Court pointed out that:

> "Any compromise or dismissal of a class action must be approved by the court and notice of the proposed compromise or dismissal must be given to all class members; judicial approval should be granted only after the court determines that the compromise is in the interest of the entire class. * * * In [the Court's] estimation the safeguard provided in Rule 23(e) against litigation compromises unfair to the class as a whole are adequate to insure protection of class interest under the representation of these named plaintiffs and counsel."

Needless to say, the facts in the case at bar present an *a fortiori* situation to those in the *Umbriac* case.

In addition, as plaintiff's counsel has pointed out, in at least one case in this

district, viz: *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968), where counsel in the case at bar represented his mother, mother-in-law, father-in-law and a family friend, plaintiff's adequacy to represent the class was sustained, although it was not directly challenged on this particular point.

The determinative fact in this Court's opinion is that defendants have not made any showing that plaintiff is likely to have any interest in any fee which may be recovered by his son if plaintiff is successful in his case. Indeed plaintiff's son has sworn that "this is simply not true" and that "plaintiff would have no economic interest either directly or indirectly in the matter of any attorney's fee that I might be awarded in this litigation were the plaintiff and the class to prevail on the merits or to obtain a recovery by way of settlement."

Under the circumstances, there would appear to be no merit to this portion of defendants' argument.

Finally, defendants argue that even if plaintiff were not related to counsel, he would still be unable to adequately protect the interests of the class because of his physical disabilities and his alleged lack of interest and knowledge about the case.

In a stockholders derivative action at least the United States Supreme Court has indicated quite clearly that lack of knowledge and interest in a case "cannot justify [a] court's summary dismissal" of a case. *Surowitz v. Hilton Hotels Corporation,* 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966).

Similarly, the question of whether the plaintiff in the case at bar is 70 years of age and whether he suffers one or more physical disabilities would scarcely seem to be an adequate ground for denial of his motion to maintain this action as a class action. To date, his attorney, whether at his instance or otherwise, has vigorously prosecuted this action, and based on oral argument and the briefs submitted herein, is thoroughly competent to act as attorney for the class.

## CONCLUSION

The Court finds that the class which the plaintiff seeks to represent is an objectively ascertainable group being parties who purchased Series O preferred stock between April 13, 1971 and March 6, 1974; the class is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims of the plaintiff are typical of the claims of the class; the questions of law and fact common to the members of the class predominate over any questions affecting only individual members of the class; a class action is superior to other available methods for the fair and efficient adjudication of the controversy and the plaintiff as a representative party will fairly and adequately protect the interests of the class.

Counsel for the plaintiff should submit an order on three days notice determining the class as set forth above and specifying the time and manner of giving notice to the class.

The order and the notice should specify that the Court reserves jurisdiction pursuant to F.R.Civ.P. 23(c)(1) to modify, alter, or amend the order.