Carolyn SICINSKI, Individually and on behalf of all other persons similarly situated, Plaintiff,

v.

RELIANCE FUNDING CORPORATION and the Title Guarantee Company, Defendants.

No. 78 CIV. 4192(MP).

United States District Court, S. D. New York.

June 26, 1979.

and Dutchess Counties, New York, between July 1977 and July 1978. Reliance Funding Corporation made one such loan to the plaintiff to enable her to buy a house. The defendant Title Guarantee Company supplied mortgage title insurance, fee title insurance or both in 81 of these 303 transactions. It supplied mortgage title insurance to Reliance in the plaintiff's transaction.

Reliance's general attorneys in New York State were Russo, Taub, Fusco & Kuffner. The closings of loans that Reliance made in the three counties took place in the offices of James Feeney, Esq., who performed some of the work involved in the closings. Title Guarantee also retained Feeney to examine some of the titles that it insured.

The plaintiff asserts two claims against Title Guarantee. She alleges that Reliance authorized Feeney to choose the company to supply title insurance; that Feeney chose Title Guarantee; that when he did so, Title Guarantee retained Feeney as its examining counsel; that Title Guarantee paid Feeney 70% of its title insurance premium for his services as examining counsel; that 70% of the premium was more than the going rate for examining counsel; and that the difference between 70% and the going rate was a kickback from Title Guarantee paid to Feeney in return for Feeney selecting Title Guarantee to supply title insurance. This alleged kickback is said to have violated section 8(a) of RESPA, 12 U.S.C. § 2607(a), which provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

The plaintiff alleges also that when Feeney prepared the title report in her transaction, he copied part of a title report on the same property prepared earlier by someone else, and that Title Guarantee nevertheless paid Feeney his normal fee for preparing a complete report. This payment is alleged to have violated section 8(b) of RESPA, 12 U.S.C. § 2607(b), which provides:

Lee A. Hoffman, Jr., New York City, John Doar, New York City, and Schwall & Carroll, by Leonard H. Schwall, Isabel L. Becker, New City, for plaintiff.

Boyle, Vogeler & Stebbings, New York City by Roger Boyle, and Jonathan Zich, New York City, for defendant (Reliance).

Milbank, Tweed, Hadley & McCloy, New York City by Peter A. Copeland, New York City, for defendant (Title Guarantee).

## DECISION

POLLACK, District Judge.

The plaintiff has moved to certify this case as a class action under Fed.R.Civ.P. 23(a) and 23(b)(3). For the reasons shown hereafter, her motion must be denied.

### I.

This case arises under two federal statutes, the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601–1667e, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601–2617. The complaint alleges that the defendant Reliance Mortgage Corporation and its predecessor Reliance Funding Corporation made 303 VA and FHA mortgage loans in Rockland, Orange

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

The plaintiff also asserts two claims against Reliance. She alleges that Reliance, the Russo firm and Feeney agreed that Feeney would receive $60 per closing and that the Russo firm would receive the balance of the lender's attorney's fees paid by the mortgagor. This alleged agreement is said to have violated section 8(b) of RESPA.

Finally, the plaintiff alleges that Reliance failed to disclose adequately to its borrowers that the Russo firm would receive all attorney's fees in excess of $60; that Feeney would receive 70% of the title insurance premium from Title Guarantee; the names, addresses and telephone numbers of those that Reliance selected to supply title insurance and legal services; whether Reliance had a business relationship with the chosen suppliers of title insurance and legal services; the amount of the title insurance premium, tax and insurance escrows, and attorney's fees to be withheld from the mortgage proceeds; and the interest rate on the mortgage loans. These alleged failures to disclose are said to have violated sections 107 and 121 of TILA, 15 U.S.C. §§ 1606, 1631, and section 4 of RESPA, 12 U.S.C. § 2603, and certain regulations promulgated thereunder.

## II.

The plaintiff now moves to certify a plaintiff class consisting of the 303 persons to whom Reliance made mortgage loans in Rockland, Orange and Dutchess Counties, New York, between July 1977 and July 1978. Under Fed.R.Civ.P. 23(a) and 23(b)(3), a case may be maintained as a class action if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the

representative party are typical of the claims or defenses of the class, the representative party will fairly and adequately protect the interests of the class, common questions of law or fact predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In this case, common questions of law or fact do not predominate, the plaintiff's claims are subject to atypical defenses, and the Court is not satisfied that the plaintiff and her counsel would fairly and adequately protect the interests of the proposed class.

## III.

Three of the plaintiff's four claims are asserted under section 8 of RESPA. In none of these three claims do common questions predominate.

The plaintiff asserts that Title Guarantee violated section 8(a) of RESPA when it paid Feeney 70% of its title insurance premium, allegedly as a kickback for the referral of Reliance's title insurance business. Section 8(a) is qualified, however, by section 8(c), 12 U.S.C. § 2607(c), which provides:

Nothing in this section shall be construed as prohibiting (1) the payment of a fee (A) to attorneys at law for services actually rendered or (B) by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance or (C) by a lender to its duly appointed agent for services actually performed in the making of a loan.

Section 8(a) is further qualified by 24 C.F.R. § 3500.14(e):

The payment and receipt of a thing of value that bears a reasonable relationship to the value of the goods or services received by the person or company making the payment is not prohibited by RESPA section 8. To the extent the thing of value is in excess of the reasonable value of the goods provided or services performed, the excess is not for serv-

ices actually rendered and may be considered a kickback or referral fee proscribed by RESPA section 8. The value of the referral itself (i. e., the additional business obtained thereby) is not to be taken into account in determining whether the payment is reasonable.

Whether Title Guarantee is liable under section 8(a), then, will depend upon whether its payments to Feeney were reasonably related to the services he rendered as examining counsel. Those payments ranged from $104.10 to $264.60 in the 81 transactions that would be encompassed in the proposed class action. For each individual transaction, the Court would have to ascertain what services Feeney rendered and to decide whether Title Guarantee's payment was reasonably related to those services. In this inquiry, common questions certainly would not predominate. *See Schaffner v. Chemical Bank,* 339 F.Supp. 329, 334 (S.D.N.Y.1972).

The plaintiff asserts that Reliance violated section 8(b) of RESPA by agreeing with Feeney and the Russo firm that Feeney would receive $60 per closing and the Russo firm the balance of the lender's attorney's fees paid by the mortgagor. Like section 8(a), section 8(b) is qualified by the "reasonable relationship" test of section 8(c) and 24 C.F.R. § 3500.14(e). If this case were to proceed as a class action, the Court would have to ascertain what services Feeney and the Russo firm each rendered in 303 separate transactions and to decide whether the fees received by each were reasonably related to their work.

The plaintiff's third claim under section 8 is that Title Guarantee violated section 8(b) by paying Feeney his normal fee for a title report that included one page photocopied from an earlier report prepared by another examiner. The plaintiff has submitted no evidence—after having been granted extensive discovery—that Feeney included copied pages in any other reports prepared for Title Guarantee, and nothing in the circumstances of this incident, so far as they now appear, suggests that he did.[1]

## IV.

Two of the plaintiff's four claims apparently are subject to defenses that may not apply to other members of the proposed class. Title Guarantee intends to argue that the plaintiff is estopped from asserting her claim against it under section 8(b)— that it paid Feeney for a title report in which he included a page photocopied from Sarro's earlier report—because her counsel knew of the fact in advance of the closing and failed to inform Title Guarantee. Reliance intends to defend against the plaintiff's claims of non-disclosure on the grounds that some or all of the information allegedly omitted from its standard forms was disclosed by letter to plaintiff's counsel.

---

1. From depositions and other documents so far filed with the Court, it appears that in November 1977, the plaintiff signed a contract to purchase a house. She obtained an FHA–insured mortgage from Reliance. Reliance required the plaintiff to pay for mortgage title insurance, which Feeney, Reliance's closing attorney, ordered from Title Guarantee by letter dated January 3, 1978.

Before Feeney ordered mortgage title insurance from Title Guarantee, the plaintiff's closing attorney, Mr. Hoffman (who also represents her in this action), also ordered mortgage title insurance from Mr. Vincent Sarro of Hudson Valley Abstract Co. Sarro prepared a title report and sent copies to Feeney, Hoffman and the seller's attorney, but not to Title Guarantee. Sarro learned thereafter that Feeney had ordered mortgage title insurance from Title Guarantee, and that Hoffman's application to Hudson Valley for insurance was cancelled.

Feeney's letter to Title Guarantee of January 3, 1978, transmitted a completed and signed Examining Counsel's Certificate of Title, in which Feeney certified to Title Guarantee that in his opinion the information therein correctly reflected the status of the title to the premises. Based on Feeney's certificate, Title Guarantee prepared a mortgage title report. Title Guarantee's report included an apparent photocopy of one page of the report prepared earlier by Sarro in response to Hoffman's application for insurance and sent to Feeney, Hoffman and the seller's attorney. Sarro brought the use of this copied page to the attention of Hoffman, plaintiff's counsel, before the closing.

(This recital, of course, does not foreshadow what the Court may find after trial to have occurred, but is intended only to show that the plaintiff's allegation raises no questions common to the proposed class.)

"[C]lass status must be denied when, as here, the putative representative is subject to unique defenses that will unnecessarily prejudice the class's probability of success." *Greenspan v. Brassler,* 78 F.R.D. 130, 132 (S.D.N.Y.1978).

### V.

The deposition of the plaintiff revealed that she does not know what mortgage title insurance is other than something one needs in order to buy a house; that she does not know the difference between mortgage title insurance and fee title insurance; that she does not know what role examining counsel played in her transaction; that she does not know whether Feeney has done anything wrong; that she cannot articulate in layman's terms what her claims are against at least one of the defendants; that she does not know how her alleged damages were calculated; and that she is not certain of the amount for which she may be liable in costs if she does not prevail. In the face of the plaintiff's "limited personal knowledge of the facts underlying this suit," *Greenspan v. Brassler, supra,* 78 F.R.D. at 134, the Court concludes that she would not adequately represent the interests of the proposed class.

In addition, one or perhaps two of the plaintiff's attorneys are likely to be fact witnesses at trial. Mr. Hoffman represented the plaintiff in the purchase of her home. As noted above, he allegedly knew of the photocopied page in Title Guarantee's report and received one or more communications from Reliance that disclosed material facts of the transaction. Mr. Schwall has represented to the Department of Housing and Urban Development that he is very knowledgeable about real estate transactions in the three counties and may be called to testify about the relation between the fees paid to and the services rendered by Feeney and the Russo firm. As stated in Ethical Consideration 5–9 of the Code of Professional Responsibility, "[t]he roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

Finally, the Court has carefully examined the performance of plaintiff's counsel in the extensive proceedings thus far and is not satisfied that they will adequately represent the interests of the proposed class.[2]

### VI.

"To be maintainable as a class action a suit must meet all the requirements set forth in Section 23(a) and also fall within one of the subsections of 23(b)." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 561 (2d Cir. 1968). Since this case does not meet all of the requirements of Rule 23, the plaintiff's motion to certify it as a class action is denied.

SO ORDERED.

---

2. Counsel apparently conducted an inadequate investigation before filing the complaint. The original complaint alleged that Reliance had made mortgage loans in Rockland, Orange and Putnam Counties. Counsel learned later from public records that Reliance had made no loans in Putnam County but had made loans in Dutchess County. After completing substantial discovery of the defendants, the plaintiff moved to amend her complaint to substitute Dutchess County for Putnam County, thereby necessitating repetitive discovery. When leave to amend the complaint was granted, counsel did not file an amended complaint.

Since the complaint was filed, plaintiff's counsel have not proceeded expeditiously. They waited two and one-half months after the case was removed from state court before moving unsuccessfully to remand it; repeatedly delayed moving to certify the class (itself a reason to deny class certification); filed papers late several times; and waited almost one month after Feeney refused to produce documents before moving unsuccessfully to hold him in contempt. Counsel then moved to hold Feeney in contempt for not producing documents that they had not subpoenaed.

Finally, plaintiff's counsel violated the consent order of confidentiality by exposing Title Guarantee documents in publicly-available motion papers filed with the Court.

All of the above took place while original counsel of record were conducting the litigation alone before the retention of plaintiff's special trial counsel.