## In re SEPRACOR INC. SECURITIES LITIGATION.

Nos. 02–CV–12235–MEL,
02–CV–12338–MEL.

United States District Court,
D. Massachusetts.

Sept. 8, 2005.

Paul F. Bennett, Gold Bennett & Cera LLP, San Francisco, CA, Carole A. Broderick, Berger & Montague, Philadelphia, PA, Brian S Cohen, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, Deborah R. Gross, Law Office of Bernard M. Gross, PC, Philadelphia, PA, Theodore M. Hess–Mahan, Shapiro Haber & Urmy LLP, Boston, MA, Stacey Theresa Kelly, Wolf Haldenstein Adler Freeman & Herz, LLP, New York, NY, Gregory M. Nespole, Wolf, Haldenstein, Adler, Freeman & Herz LLP, New York, NY, Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Boston, MA, David L. Wales, Wolf, Haldenstein, Adler, Freeman & Herz LLP, New York, NY, for Staro Asset Management, LLC, Plaintiff.

Michael R Dube, Wilmer Hale, Boston, MA, Mary J. Johnson, Wilmer Hale, Boston, MA, Mary Jo Johnson, Wilmer Hale, Boston, MA, Joanne L Monteavaro, Wilmer Culter Pickering Hale and Dorr,LLP, New York, NY, Jeffrey B. Rudman, Wilmer Hale, Boston, MA, Peter A. Spaeth, Wilmer Hale, Boston, MA, Christine M. Trowbridge, Wilmer Hale, Boston, MA, for Sepracor, Inc., David P. Southwell, Paul D. Rubin, Timothy J. Barberich, Defendants.

### MEMORANDUM AND ORDER

LASKER, District Judge.

These cases are a consolidation of a number of securities fraud actions brought on behalf of those who invested in Sepracor, Inc. ("Sepracor"). The plaintiffs allege violations of §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, and of corresponding Securities and Exchange Commission Rule 10b–5. The issue is whether Sepracor made misleading statements about the clinical trial safety record of an antihistamine product named Soltara and its prospects for approval by the Federal Drug Administration ("FDA"). When Soltara's cardiac side effects and the FDA's resulting non-approval of Soltara were eventually revealed, the price of Sepracor stock fell approximately 60%, from a closing price of $47.26 per share on March 6, 2002, to a closing price of $19.64 per share on March 7, 2002.

The plaintiffs have filed two motions for class certification: (1) a motion by Staro Asset Management, LLC ("Staro") in the debt purchasers' action, seeking certification of a class consisting of all persons or entities who purchased Sepracor's debt securities during the period of May 17, 1999 through March 6, 2002 (the "class period") and who were damaged thereby; and (2) a motion by Westmont Venture Partners, LLC ("Westmont"), Leon Atkind ("Atkind"), and Howard Galbut ("Galbut") in the equity purchasers' action, seeking certification of a class consisting of all persons or entities who purchased Sepracor common stock or call options, or who sold Sepracor put options, during the class period and who were damaged thereby. The issue for decision is whether the proposed plaintiffs are adequate and typical class representatives.

### I. Debt Purchasers' Action

It is not disputed that the proposed class is so numerous that joinder of all class members is impracticable, or that there are questions of law and fact common to all members

the class. Moreover, Staro's claims arise from the same events or course of conduct as do the injuries that form the basis of the class claims and are based on the same legal theory.

The disputed issue for decision is whether Staro is a typical plaintiff who will adequately protect the interests of the class.

■ Sepracor vehemently challenges Staro's adequacy and suitability as a class representative for the debt purchaser plaintiffs. In particular, Sepracor questions Staro's honesty and integrity, in particular its failure to disclose in its filings with the Court that it engaged in hedging transactions in Sepracor stock. I find that these contentions are without merit. Staro filed an action on behalf of a class of bond purchasers and listed all of its bond transactions in its certification, because those were the transactions "in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u–4(a)(2)(A)(iv). *See In re Oxford Health Plans Inc. Securities Litigation,* 199 F.R.D. 119, 124 (S.D.N.Y.2001)(finding no evidence that the court was misled where named plaintiffs did not list options trades because they were not the subject of the complaint). Moreover, Staro's settlement of two strict liability short-swing profit cases, one of which was dismissed on summary judgment, does not impinge upon its character. Nothing in the record of this litigation suggests improprieties which might devalue Staro's adequacy as a class representative.

Sepracor's contention that Staro suffered no economic loss as a result of Sepracor's alleged fraud, and is therefore unfit to represent the class, is also without merit. Sepracor asserts that the net effect of Staro's convertible arbitrage was that it earned a gain on its class period transactions in Sepracor securities. However, I disagree with Sepracor's suggested cumulative methodology, which includes offsetting gains in the loss calculation. To the contrary, I find a transaction-based methodology, which allows claims for unprofitable transactions without offsetting that recoverable loss with gains from profitable transactions, to be more consistent with the provisions of the statute and rule.

The language of Section 10(b) and Rule 10b–5 is more consistent with a transaction-based methodology than a cumulative one. Both provisions make it illegal for someone to make materially misleading statements "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b) (2004); 17 C.F.R. § 240.10b–5 (2004). By using the singular nouns "purchase" or "sale", Congress and the SEC focus on each transaction individually. Neither the statute nor the Rule authorize any sort of aggregation of purchases or sales that could sanction the cumulative approach.

*Argent Classic Convertible Arbitrage v. Rite Aid,* 315 F.Supp.2d 666, 680 (E.D.Pa.2004).

Contrary to Sepracor's contentions, I also find that Staro did rely on the integrity of the market when it purchased Sepracor bonds and engaged in hedging strategies during the class period. "[I]t is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" *Basic, Inc. v. Levinson,* 485 U.S. 224, 246–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)(quoting *Schlanger v. Four–Phase Systems, Inc.,* 555 F.Supp. 535, 538 (S.D.N.Y. 1982)). Convertible arbitrage is not inconsistent with reliance on the integrity of the market. Accordingly, the argument that Staro is subject to unique defenses that might rebut the presumption of reliance to the detriment of the class members' case does not make the grade. Moreover, courts are traditionally reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members. As the Court of Appeals for this circuit has stated: "where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses. After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Southwestern Bell Mobile Systems, Inc.,* 323 F.3d 32, 39 (1st Cir.2003)(internal citations omitted).

I therefore find that Staro has satisfied the requirements of Fed.R.Civ.P. 23(a) and (b), and accordingly the motion for class certification is GRANTED.

## II. Equity Purchasers' Action

### A. Proposed Class Representative Leon Atkind

Proposed class representative Atkind's motion for class certification is DENIED because he fails to meet the typicality and adequacy requirements of Fed.R.Civ.P. 23(a)(3) and (4).

■ Atkind's lack of basic knowledge about this case renders him inadequate to serve as a class representative. *Greenspan v. Brassler*, 78 F.R.D. 130, 133–34 (D.C.N.Y.1978)("Plaintiffs' limited personal knowledge of the facts underlying this suit, as well as their apparently superfluous role in this litigation to date, indicate their inadequacy as class representatives"). When questioned at deposition about the facts alleged in the Complaint and his investment in Sepracor securities, Atkind demonstrated a serious lack of familiarity with the case. Atkind did not know the name of the defendant. "Q: Just tell me the name of the company you are suing. . . .A: It is SOL something. I can't remember the entire name." (Atkind Depo., 50:2–6.) Atkind did not know the name of the drug at the center of this case, nor the condition it was intended to treat. "Q: What was the new drug? A: Solacare or something like that. . . .Q: What was the drug supposed to do? A: I can't recall." *Id.* at 8:8–9, 15–16. Atkind is unaware that the instant suit covers only investors who traded in Sepracor securities during a certain period of time. "Q: Can you tell me if there is a class period in this case? A: I don't know what that means." *Id.* at 65:2–4. With regard to his own investment, Atkind did not know when he bought Sepracor stock, nor could he explain terms such as "common stock", "options", "covered calls" or "puts". *Id.* at 18:9–14, 9–10:20–2, 60:2–16.

Moreover, Atkind's role in the case is superfluous, having delegated decisions as to his investment in Sepracor and his obligations in the case to his grandson, Marc Samwick ("Samwick"). Samwick answered interrogatories for Atkind. *Id.*, 36–37:21–2. Further, Samwick's testimony makes clear that Atkind agreed to lend his name to this suit only upon the condition that it would take a minimal amount of time. "[W]e talked about whether it would involve his time or not. And he wasn't really interested at age 89 in pursuing the time. And I said that it wouldn't be a concern, that I could handle it and I would manage it for him." (Samwick Depo., 58–59:25–5). His minimal familiarity with the basic facts of the claims, deference on matters crucial to the case, and lack of interest in pursuing the suit, render Atkind an inadequate class representative. Atkind's motion for class certification is therefore DENIED.

### B. Proposed Class Representative Westmont Venture Partners, LLC

Westmont's proposed designee is Marc Samwick, the grandson of proposed class representative Atkind. Sepracor asserts that Westmont is atypical and inadequate to represent the class on three grounds.

■ First, Sepracor contends that questions about Samwick's credibility and integrity subject Westmont to unique defenses, to the detriment of the class. Sepracor specifies inconsistencies between Atkind's and Samwick's testimony as to when Atkind learned of the suit, who made the decision to sue, and how ownership of Westmont is divided. However, although Samwick's deposition testimony on these points conflicts in certain respects with that of Atkind, "individual recollections of [a] plaintiff with respect to the particular information he relied on and his memory of certain events is of minimal import if the plaintiff is able to show that he relied on the integrity of the market in making his investment decision." *Adair v. Sorenson*, 134 F.R.D. 13, 19 (D.Mass.1991). It is undisputed that Samwick relied upon the integrity of the market in devising an investment strategy, and his knowledge of the case is more than adequate. While Sepracor may inquire about inconsistencies in Samwick's testimony at trial, the inconsistencies are not so significant or unexplainable as to burden

**56**

the class unduly or divert substantial attention from the subject of the class claim.

Second, Sepracor argues that as an option trader who did not own Sepracor common stock, Westmont is ineligible to represent a class of stock purchasers. However, purchasers of different types of securities have often been found qualified to represent purchasers of other types of securities of the same issuer. *See, e.g., In re Enron Corp. Securities Litigation,* 206 F.R.D. 427, 445 (S.D.Tex.2002)("When plaintiffs have alleged such a common course of conduct, courts consistently have found no bar to class certification even though members of a class may have purchased different types of securities or interests"); *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 371 (D.Del.1990)(certifying plaintiff who had never purchased common stock as typical and adequate to represent all purchasers of both common stock and call options because "[i]t is clear the [Third Circuit] considers the positions of stock purchasers and option purchasers substantially the same vis-a-vis securities fraud"). I agree with this analysis and conclude that Westmont is eligible to represent a class that includes purchasers of all Sepracor equity securities.

Third, Sepracor submits that Westmont is subject to unique defenses regarding reliance and materiality because it maintained its position in Sepracor stock following the disclosure of Sepracor's alleged fraud. However, post-class period transactions do not render Westmont atypical. "Rolling over" an option in an effort to cover some losses is a common investment strategy, and does not demonstrate that a plaintiff failed to rely on the integrity of the market. *See In re Atlantic Financial Federal Securities Litigation,* 1990 WL 188927 at *4 (E.D.Pa.1990) ("I cannot infer that the integrity of the market price was irrelevant to these Plaintiffs solely because they made purchases after disclosure of the alleged fraud. Plaintiffs state that their purchasers were made essentially to 'average down' the losses they incurred through the fraud....It is plausible that Plaintiffs thought once the fraud was disclosed, the true value of the stock would become apparent, the market price would

adjust accordingly, and Plaintiffs could decrease their losses by further purchases"); *Malone v. Microdyne Corp.,* 148 F.R.D. 153, 159 (E.D.Va.1993)("the 'averaging down' strategy...does not vitiate reliance on the integrity of the marker and does not subject [plaintiffs] to defenses that are atypical in comparison to the remainder of the class").

I conclude that Westmont's claims are typical of the class claims and that Westmont will adequately protect the interests of the class. For these reasons, Westmont's motion for class certification is GRANTED.

### C. Proposed Class Representative Howard Galbut

Sepracor contends that credibility issues render Galbut unfit to serve as a representative of the class of equity purchasers. Sepracor argues that in his certification, Galbut set forth only a single class period transaction in Sepracor securities, while omitting nine class period transactions. Sepracor also contends that Galbut answered Interrogatory No. 9 falsely by stating that he had never been a party to any other lawsuit. In fact, as Galbut admitted upon deposition, he has been a defendant in two prior suits.

Sepracor's argument that Galbut's credibility is seriously impaired by these inconsistencies is a considerable exaggeration. Galbut does not suffer from the type of credibility issues that merit denial of class certification. The two prior suits that Galbut failed to disclose were both dismissed without any finding of liability or wrongdoing by him. The information that Galbut omitted in his certification was later fully provided in response to Sepracor's written discovery requests. *See In re IPO Securities Litigation,* 227 F.R.D. 65 at 98, 2004 U.S. Dist. LEXIS 20497 at *103–05("there is no evidence that any of the conduct here was the result of bad faith or an attempt to deceive defendants or the court....none of the inconsistencies or omissions complained of by defendants, such as failing to disclose certain specific transactions, affect the merits of the class representatives' manipulation claims."). Questions of credibility which do not affect a plaintiff's ability to represent the class or to pursue the merits of the cause of action routinely fail to

defeat certification. *See Tolan v. Computer-vision Corp.,* 696 F.Supp. 771, 780 (D.Mass. 1988); *In re Frontier Ins. Group Securities Litigation,* 172 F.R.D. 31, 41 (E.D.N.Y.1997). Galbut's interests are not antagonistic to those of the class as a whole. In sum, Sepracor has failed to establish that Galbut is not qualified to represent the class of equity purchasers.

\* \* \* \* \* \*

Staro's motion for class certification in the debt purchasers' action is GRANTED; Atkind's motion for class certification in the equity purchasers' action is DENIED; and Westmont's and Galbut's motions for class certification in the equity purchasers' action are GRANTED.

It is so ordered.